1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| JAMAI JOHNSON, | ) | No. C 02-4632 RMW (PR) |
| Petitioner, | ) | ORDER DENYING IN PART |
| vs. | ) | PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS; FURTHER |
| | ) | BRIEFING |
| JOHN W. HAVILAND, Warden, | ) | |
| Respondent. | ) | |

16

17          Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus

18 pursuant to 28 U.S.C. § 2254.  On November 24, 2003, petitioner filed an amended petition,

19 along with a request to stay the amended petition so that he could return to state court to exhaust

20 several unexhausted claims.  On September 16, 2004, the court granted petitioner's motion to

21 stay.  On November 29, 2004, petitioner filed a second amended petition, although he had not

22 yet fully exhausted his state claims.  On July 24, 2009, the court received petitioner's third

23 amended petition.  On September 8, 2009, the court re-opened the case, and ordered respondent

24 to show cause why the petition should not be granted.  Respondent filed a motion to dismiss the

25 petition as untimely.  The court granted in part and denied in part respondent's motion.  Then, on

26 November 28, 2010, respondent filed an answer addressing the merits of remaining claims in the

27

28

1   third amended petition.  Petitioner has filed a traverse.  Having reviewed the briefs and the

2   underlying record, the court DENIES the petition in part, and orders further briefing.

3                                          **BACKGROUND**

4          On July 4, 1998, at the Alameda fairgrounds, there was a carnival.  Around 8:20 p.m.,

5   there was a group of about 20 to 30 people together, and it appeared as though some of them

6   began to fight.  Suddenly gunshots were heard, and everyone scattered.  Petitioner was arrested

7   and charged with five counts of assault with a firearm; five counts of attempted murder; one

8   count of possession of cocaine for sale; and one count of possession of marijuana for sale.

9   (Resp. Ex. 6 at 1-2.)  After a jury trial, petitioner was found guilty of all the assault and drug

10  charges, and found all the related enhancement allegations to be true.  (Id. at 2.)  The jury

11  acquitted him of four of the five attempted murder charges, and deadlocked on the fifth, which

12  was later dismissed.  (Id.)  On June 9, 2000, the trial court sentenced petitioner to a term of 31

13  years 8 months.  (Id.)  The California Court of Appeal affirmed.  The California Supreme Court

14  denied review.  The United States Supreme Court denied a writ of certiorari.  Petitioner filed

15  numerous unsuccessful state habeas petitions thereafter.

16                                          **DISCUSSION**

17  A.      Standard of Review

18         This court may entertain a petition for writ of habeas corpus "in behalf of a person in

19  custody pursuant to the judgment of a state court only on the ground that he is in custody in

20  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

21  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court

22  may not grant a petition challenging a state conviction or sentence on the basis of a claim that

23  was reviewed on the merits in state court unless the state court's adjudication of the claim

24  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

25  clearly established federal law, as determined by the Supreme Court of the United States; or

26  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

27  the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The first prong

28

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

1  applies both to questions of law and to mixed questions of law and fact, <u>Williams v. Taylor</u>, 529

2  U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual

3  determinations, <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

4      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

5  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

6  law or if the state court decides a case differently than [the] Court has on a set of materially

7  indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13.  A state court decision is an

8  "unreasonable application of" Supreme Court authority, falling under the second clause of

9  § 2254(d)(1), if the state court correctly identifies the governing legal principle from the

10 Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's

11 case." <u>Id.</u> at 413.  The federal court on habeas review may not issue the writ "simply because

12 that court concludes in its independent judgment that the relevant state-court decision applied

13 clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411.

14     Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

15 will not be overturned on factual grounds unless objectively unreasonable in light of the

16 evidence presented in the state-court proceeding."  <u>Miller-El</u>, 537 U.S. at 340.

17     In determining whether the state court's decision is contrary to, or involved an

18 unreasonable application of, clearly established federal law, a federal court looks to the decision

19 of the highest state court to address the merits of a petitioner's claim in a reasoned decision.

20 <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n. 7 (9th Cir. 2000).  Here, that decision is the California

21 Court of Appeal.

22 B.   <u>Petitioner's Claims</u>

23     As grounds for federal habeas relief petitioner claims that: (1) the prosecutor's use of

24 peremptory challenges to excuse two African American jurors violated race-neutral restrictions

25 in jury selection; (2) the trial court erred in sentencing petitioner to the upper term rather than the

26 mid term for the enhancements; (3) the trial court erred in denying petitioner's motion to strike

27 gang enhancements and exclude evidence of gang activity and gang expert testimony; (4) the

28

1   trial court erred in denying petitioner's motion to exclude the in-court identification; (5) the trial

2   court erred in denying petitioner's motion for judgment of acquittal; (6)  the trial court

3   improperly refused to give proposed defense jury instruction numbers 2, 3, 4, 5, and 6; (7) the

4   trial court erred in giving the prosecution's special jury instruction number 1; and (8) the trial

5   court erroneously modified CALJIC numbers 9.00, 9.01, and 9.02 and the transferred intent

6   doctrine.

7          1.    Jury selection

8          Petitioner claims that his right to equal protection was violated because the prosecutor

9   used peremptory challenges to exclude African American jurors from the jury based solely on

10  their race.  At trial, the prosecutor made three peremptory challenges against three African

11  Americans prospective jurors.  After these challenges, petitioner made a Wheeler motion, People

12  v. Wheeler, 22 Cal. 3d 258 (1978), observing that three of the prosecution's eight peremptory

13  challenges had been African Americans.  (RT 167.)  The prosecutor noted that two African

14  Americans remained on the jury.  (RT 168.)  Reserving the question of whether petitioner had

15  made a prima facie case of discrimination, the trial court asked the prosecutor to state his reasons

16  for excluding the three African American jurors.[1]

17         Regarding the first, Cynthia Martin, the prosecutor stated that he never leaves postal

18  workers on juries because, from his experience, and the experience of other deputy district

19  attorneys, "of all the career categories that are least sympathetic to law enforcement, least

20  sympathetic to the prosecution, postal workers is [sic] No. 1."  (RT 170-71.)  The prosecutor also

21  commented that he factored into his decision that Ms. Martin's sister had been arrested for a

22  drug offense, that she expressed feelings of being "gang-neutral," and that she appeared to have

23  better "body language" toward petitioner's counsel than toward him.  (RT 170-72.)

24         Regarding the third juror, Kevin Younger, the prosecutor stated that he was not able to

25

26          [1] Because petitioner only challenges the prosecution's striking of two jurors, Cynthia
27  Martin and Kevin Younger, the court will not discuss the striking of the third juror, William
    Bolden.
28
    Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
    G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

1   establish any rapport with Mr. Younger.  (RT 175.)  The prosecutor explained that Mr. Younger

2   was friendly to him earlier in the day.  (Id.)  However, after the prosecutor exercised a

3   peremptory strike against William Bolden in the afternoon, the prosecutor felt that Mr. Younger

4   resented him for that strike.  (Id. at 175-76.)  In addition, the prosecutor indicated his concern

5   that Mr. Younger worked for the Berkeley Unified School District, which is generally a very

6   liberal area, and is "not particularly one that you can expect to have a lot of people who are

7   sympathetic to law enforcement, at least in these types of cases."  (RT 176.)

8       The trial court denied the motion, finding that petitioner failed to show a "strong

9   likelihood" that there was a prima facie case to support a Wheeler motion when three African

10   Americans were excluded based on their race, one of which was almost stricken for cause.  (RT

11   182.)  Alternatively, the trial court concluded that the prosecution's explanations for striking the

12   jurors were race-neutral and were "acceptable use[s] of a challenge."

13       On appeal, the California Court of Appeal found that the trial court's determination that

14   petitioner failed to demonstrate a prima facie case of discrimination was erroneous.  (Resp. Ex. 6

15   at 4.)  The court stated that the "strong likelihood" standard was synonymous with the

16   "reasonable inference" standard.  (Id.)  The appellate court went on to conclude that the

17   prosecutor's reasons for excluding both Ms. Martin and Mr. Younger were race-neutral, and

18   affirmed the denial of the Wheeler motion.  (Id. at 5.)

19       In determining whether a contested peremptory challenge is racially motivated in

20   violation of Batson v. Kentucky, 476 U.S. 79 (1986), a trial court must apply a three-prong

21   analysis.  See Miller-El v. Dretke, 545 U.S. 231, 240 (2005).  First, the defendant must make a

22   prima facie showing that the prosecutor exercised the peremptory challenge on the basis of race.

23   Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a

24   race-neutral explanation for striking the juror in question.  To survive step two, the prosecutor

25   need not articulate an explanation that is persuasive or even plausible, so long as the proffered

26   reason is race-neutral.  See Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam) (explaining

27   that "a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal

28

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

1   protection"). Assuming the prosecutor satisfies his relatively minimal burden of production, the

2   trial court must then assess the prosecutor's credibility to determine if the reason(s) he proffered

3   genuinely motivated him to strike the juror. Id. at 768-69. At this stage in the analysis, "in

4   deciding if the defendant has carried his burden of persuasion, a court must undertake a sensitive

5   inquiry into such circumstantial and direct evidence of intent as may be available." Batson, 476

6   U.S. at 93. "This final step involves evaluating 'the persuasiveness of the justification' proffered

7   by the prosecutor, but 'the ultimate burden of persuasion regarding racial motivation rests with,

8   and never shifts from, the opponent of the strike.'" Rice v. Collins, 546 U.S. 333, 338 (2006)

9   (quoting Purkett, 514 U.S. at 768).

10      Here, the California Court of Appeal applied the wrong standard when it equated

11  "reasonable inference" with "strong likelihood." Johnson v. Finn, 665 F.3d 1063, 1068 (9th Cir.

12  2011); see Johnson v. California, 545 U.S. 162 (2005). "A state court that equates a correct

13  standard with an incorrect standard cannot be applying the correct standard in the manner

14  required by law." Id. Thus, "where the state court used the 'strong likelihood standard for

15  reviewing a Batson claim, the state court's findings are not entitled to deference." Williams v.

16  Runnels, 432 F.3d 1102, 1105 (9th Cir. 2006) (citing Paulino v. Castro, 371 F.3d 1083, 1090

17  (9th Cir. 2004)).

18      In addition, neither the trial court nor the appellate court undertook the third step of

19  making "'a sensitive inquiry into such circumstantial and direct evidence of intent as may be

20  available,'" including a comparative analysis of similarly situated jurors, as required by clearly

21  established Supreme Court law at the time of the trial. See Batson, 476 U.S. at 93 (quoting

22  Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977)); Miller El,

23  537 U.S. at 343; Kesser v. Cambra, 465 F.3d 351, 359-60 9th Cir. 2006). Thus, this court is

24  required to conduct the analysis de novo. Green v. LaMarque, 532 F.3d 1028, 1031 (9th Cir.

25  2008) ("By merely reiterating the prosecutor's stated reasons, and then finding they were

26  race-neutral, without analyzing the other evidence in the record to determine whether those

27  reasons were in fact the prosecutor's genuine reasons, the California Court of Appeal made

28

1  exactly the same mistake for which the Supreme Court criticized the California courts in <u>Johnson</u>

2  <u>v. California</u>, 545 U.S. at 172-73"); <u>Paulino v. Harrison</u>, 542 F.3d 692, 698 (9th Cir. 2008); <u>see,</u>

3  <u>e.g.</u>, <u>Lewis v. Lewis</u>, 321 F.3d 824 (9th Cir. 2003) (trial and appellate courts did not engage in

4  third step, and was unreasonable in its application of established Supreme Court law).

5          Here, in order to conduct "a sensitive inquiry into such circumstantial and direct evidence

6  of intent as may be available," <u>Batson</u>, 476 U.S. at 93, the court will defer its ruling until

7  respondent produces the full transcript of voir dire as well as any juror questionnaires from the

8  trial court record, and the parties have submitted further briefing. The briefing should include an

9  analysis of the effect of any error.  <u>See</u> <u>Rivera v. Illinois</u>, 556 U.S. 148 (2009); <u>United States v.</u>

10  <u>Lindsey</u>, 634 F.3d 541, 548-51 (9th Cir. 2011).

11          2.      <u>Sentencing enhancement</u>

12          Petitioner claims that, at sentencing, the trial court erred in imposing one-third of the

13  upper term of the consecutive, subordinate firearm-use enhancements.  At the time of sentencing,

14  California Penal Code § 1170.1(a) stated, "The subordinate term for each consecutive offense

15  which is a 'violent felony' . . . shall consist of one-third of the middle term of imprisonment

16  prescribed for each other felony conviction for an offense which is a violent felony for which a

17  consecutive term of imprisonment is imposed, and shall include one-third of the term imposed

18  for any specific enhancements applicable to those subordinate offenses."  (Resp. Ex. 6 at 6.)

19  Petitioner argues that the reference to "one-third of the middle term of imprisonment" is

20  ambiguous, and should apply to the clause regarding "specific enhancements."  Therefore, he

21  argues, the trial court was prohibited from imposing one-third of the upper term rather than the

22  middle term.  (<u>Id.</u>)  Respondent argues that the claim is unexhausted because petitioner never

23  raised this as a federal claim in state court, and that alternatively, it lacks merit.  Petitioner

24  concedes that he did not argue that the sentencing violated his federal constitutional rights in

25  state court.

26          Petitioner spends ten pages setting forth his argument as to why he believes the statute is

27  ambiguous, and why his interpretation of the statute is correct.  Although he uses the terms

28

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

1   "Fourteenth Amendment" and "Eighth Amendment," he does not state facts to support his

2   assertion.  A petitioner may not "transform a state-law issue into a federal one merely by

3   asserting a violation of due process." <u>Langford v. Day</u>, 110 F.3d 1380, 1389 (9th Cir. 1996).

4   Conclusory allegations in a habeas petition fail to state a claim and do not suffice to shift the

5   burden to the state to answer an order to show cause.  <u>See</u> <u>Allard v. Nelson</u>, 423 F.2d 1216, 1217

6   (9th Cir. 1970).  Moreover, the Supreme Court has repeatedly held that federal habeas writ is

7   unavailable for violations of state law or for alleged error in the interpretation or application of

8   state law, which is exactly what petitioner is arguing here.  <u>See</u> <u>Swarthout v. Cooke</u>, 131 S. Ct.

9   859, 861-62 (2011).  Finally, the interpretation of a state statute by the highest state court is

10  binding on federal courts.  <u>See</u> <u>Johnson v. Fankell</u>, 520 U.S. 911, 916 (1997).  Neither the United

11  States Supreme Court nor any other federal tribunal has any authority to place a construction on

12  a state statute different from the one rendered by the highest court of the state.  <u>See</u> <u>id.</u>

13          The court notes that in his traverse, petitioner argues for the first time that the judge's

14  imposition of upper term violated his Sixth and Fourteenth Amendment rights to a jury trial, in

15  violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>Cunningham v. California</u>, 549

16  U.S. 270 (2007).  (Traverse at 33.)  However, a traverse is not the proper pleading to raise

17  additional grounds for relief.  <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994).  "In

18  order for the State to be properly advised of additional claims, they should be presented in an

19  amended petition or . . . in a statement of additional grounds.  Then the State can answer and the

20  action can proceed."  <u>Id.</u>  Thus, this claim is not properly before the court and must be rejected.

21          Nonetheless, the court notes that <u>Cunningham</u> is not applicable to petitioner.  In <u>Butler v.</u>

22  <u>Curry</u>, 528 F.3d 624, 639 (9th Cir. 2008), the Ninth Circuit held that <u>Cunningham</u> did not

23  announce a new rule of constitutional law within the meaning of <u>Teague v. Lane</u>, 489 U.S. 288

24  (1989), and therefore, <u>Cunningham</u> could be applied retroactively on collateral review.  The

25  Ninth Circuit concluded that the result in <u>Cunningham</u> was clearly dictated by the Supreme

26  Court's Sixth Amendment case law, in particular by <u>Blakely v. Washington</u>, 542 U.S. 296

27  (2004), which was decided before the conviction of the petitioner in <u>Butler</u> became final.  <u>Butler,</u>

28

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

528 F.3d at 628.  However, although <u>Butler</u> held that <u>Cunningham</u> applied the existing rules from <u>Blakely</u>, it is inapplicable in this case because the decision in <u>Blakely</u> was issued on June 24, 2004, and the petitioner's conviction in the instant case became final on April 15, 2002, the date the Supreme Court denied his writ of certiorari.  Thus, his conviction was final more than two years prior to <u>Blakely</u>'s publication.  <u>Cf.</u> <u>Schardt v. Payne</u>, 414 F.3d 1025, 1038 (9th Cir. 2005) (holding that <u>Blakely</u> does not apply retroactively on habeas review).  As a result, <u>Blakely</u>, <u>Butler</u>, and <u>Cunningham</u> do not apply to petitioner's case.

Accordingly, the state court's rejection of this claim is not contrary to, or an unreasonable application of, clearly established federal law.  <u>See</u> 28 U.S.C. § 2244(d)(1).

3.     <u>Gang evidence</u>

At trial, the prosecution's gang expert, Michael Spearman, testified about a conflict between the Crescent Park Villains ("CPV") gang and the Easter Hill Boys ("EHB") involving crimes and sales of drugs in different territories.  (RT 1470-71, 1483-85.)  Spearman believed petitioner to be a member of the CPV based on conversations Spearman had with Muntu Williams.  (RT 1506, 1516.)  Spearman testified that CPV and EHB had a violent history, and explained the structure and primary activities of the gangs.  (RT 1475, 1481-90.)  He testified that Williams and petitioner were associated with CPV.  (RT 1488, 1500, 1506.)  He also testified that several individuals involved at the scene of the crime were members of EHB.  (RT 1507-08.)  The prosecution gave hypothetical scenarios to Spearman which tracked the proffered evidence, and Spearman gave his opinion that the shooting was done for the benefit of, and in association with, CPV with the intent to further or assist in gang activity.  <u>See</u> Cal. Penal Code § 186.22(b)(1).[2]

---

[2]  At the time of petitioner's trial, the statute provided, in relevant part, "a person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or three years at the court's discretion."  Cal. Penal Code § 186.22(b)(1) (1998).

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

1     Petitioner argues that the trial court erred in denying his motion to exclude testimony

2   from a gang expert.  Petitioner claims that the admission of the gang expert's testimony violated

3   his rights to due process, equal protection, and the effective assistance of counsel because

4   counsel was unable to cross-examine the expert regarding his confidential informants.  Petitioner

5   asserts that this testimony was improperly based on hearsay, was unsupported by the evidence,

6   and was irrelevant and prejudicial.

7     As an initial matter, respondent argues that this claim is procedurally defaulted.  A

8   federal court will not review questions of federal law decided by a state court if the decision also

9   rests on a state law ground that is independent of the federal question and adequate to support the

10   judgment.  Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  In cases in which a state

11   prisoner has defaulted his federal claims in state court pursuant to an independent and adequate

12   state procedural rule, federal habeas review of the claims is barred unless the prisoner can

13   demonstrate cause for the default and actual prejudice as a result of the alleged violation of

14   federal law, or demonstrate that failure to consider the claims will result in a fundamental

15   miscarriage of justice.  Id. at 750.  "Once the state has adequately pled the existence of an

16   independent and adequate state procedural ground as an affirmative defense, the burden to place

17   that defense in issue shifts to the petitioner," for example, by "asserting specific factual

18   allegations that demonstrate the inadequacy of the state procedure" or "demonstrating

19   inconsistent application of the rule."  Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003).

20     Petitioner raised this claim to the California Supreme Court.  (Resp. Ex. 15, Ground 3.)

21   The California Supreme Court denied petitioner's petition with citations to In re Dixon, 41 Cal.

22   2d 756 (1956), In re Swain, 34 Cal. 2d 300, 304 (1949), and In re Duvall, 9 Cal. 4th 464, 474

23   (1995).  (Resp. Ex. 16.)  Respondent argues that the claim is defaulted because of the California

24   court's citation to Dixon.  A state court opinion that summarily denies more than one claim with

25   a citation to more than one state procedural bar is ambiguous, and therefore there is no

26   procedural default if any one of the state procedural bars is not adequate and independent.  See

27   Washington v. Cambra, 208 F.3d 832, 833-34 (9th Cir. 2000).  Here, respondent does not assert

28

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

1   that <u>Duvall</u> or <u>Swain</u> are independent from federal law, or consistently applied.  Thus,

2   respondent has not met his burden of pleading the existence of an independent and adequate state

3   procedural bar.  The court now turns to the merits.

4          Even assuming that admission of the gang expert's testimony resulted in some

5   constitutional error, petitioner is not entitled to relief unless the trial error "'had a substantial and

6   injurious effect or influence in determining the jury's verdict.'"  <u>Brecht v. Abrahamson</u>, 507 U.S.

7   619, 637 (1993) (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).  In other words,

8   state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims

9   of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice."

10  <u>Brecht</u>, 507 U.S. at 637 (citation omitted).  The proper question in assessing harm in a habeas

11  case is, "Do I, the judge, think that the error substantially influenced the jury's decision?"  <u>See</u>

12  <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995).  If the court is convinced that the error did not

13  influence the jury, or had but very slight effect, the verdict and the judgment should stand.  <u>Id.</u> at

14  437.

15         Here, Spearman's testimony was provided to support the allegation of gang

16  enhancements, pursuant to California Penal Code § 186.22(b)(1).  However, those gang

17  enhancements were charged only in connection with the five counts of attempted murder.

18  Petitioner was not convicted of any of the counts of attempted murder.  Thus, the jury did not

19  make a finding that the gang enhancements to be true, and petitioner was not sentenced pursuant

20  to § 186.22(b)(1).  Thus, petitioner cannot demonstrate that he suffered "actual prejudice" from

21  the admission of the gang expert's testimony.  <u>See, e.g.</u>, <u>Hardnett v. Marshall</u>, 25 F.3d 875, 880-

22  81 (9th Cir. 1994) (finding no actual prejudice from admission of inadmissible testimony used to

23  prove premeditation because petitioner was found not guilty of first degree murder and thus, the

24  error did not infect the entire trial).

25         Accordingly, petitioner is not entitled to habeas relief on this claim.

26         4.     <u>In-court identification</u>

27         Shortly after the shooting was reported, three people were in custody at the scene and

28

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

were being held in two different sheriff department vans.  (RT 63.)  Petitioner had been arrested, and was sitting in one van along with Robert Marshal, who was also in custody.  (RT 64.) Anthony Patch, Cesar Garcia, and Steven French, all witnesses to the shooting, identified petitioner as the shooter while he was seated in the van.  Petitioner alleges that the identification procedure was impermissibly suggestive because he was the only person presented who appeared similar to the description given by the witnesses.  Petitioner also argues that he was entitled to have counsel present at the time of the identification.

Again, respondent argues that this claim is procedurally defaulted because the California Supreme Court denied petitioner's petition which included this claim with citations to In re Dixon, 41 Cal. 2d 756 (1956), In re Swain, 34 Cal. 2d 300, 304 (1949), and In re Duvall, 9 Cal. 4th 464, 474 (1995).  (Resp. Ex. 16.)  However, for the reasons already stated, respondent has not met his burden of pleading the existence of an independent and adequate state procedural bar.  The court now turns to the merits.

In cases involving admission of evidence of pretrial identifications, "[i]t is the likelihood of misidentification which violates a defendant's right to due process."  Neil v. Biggers, 409 U.S. 188, 198 (1972).  Due process protects against the admission of evidence deriving from suggestive pretrial identification procedures.  Id. at 196.  Where there has been improper state conduct in arranging unnecessarily suggestive pretrial identification procedures, moreover, this alone does not require exclusion of in-court identification testimony; the reliability of the eyewitness testimony is the "linchpin" in determining its admissibility.  Manson v. Brathwaite, 432 U.S. 98, 100-14 (1977); see United States v. Drake, 543 F3d 1080, 1089 (9th Cir. 2008) (holding finding of impermissibly suggestive identification not compelled even though there was clear directive to witness that she was about to view "the robber," and suspect was handcuffed and surrounded by uniformed police officers when witness arrived).  Identification testimony is inadmissible as a violation of due process only if (1) a pretrial encounter is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and (2) the identification is not sufficiently reliable to outweigh the corrupting effects of the suggestive

1   procedure.  See Van Pilon v. Reed, 799 F.2d 1332, 1338 (9th Cir. 1986).  A reviewing court may
2   assume suggestiveness and review reliability first.  See id. at 1339.

3   In determining whether in-court identification testimony is sufficiently reliable, courts
4   consider five factors: (1) the witness' opportunity to view the defendant at the time of the
5   incident; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description;
6   (4) the level of certainty demonstrated by the witness at the time of the identification procedure;
7   and (5) the length of time between the incident and the identification.  See Manson, 432 U.S. at
8   114; Neil, 409 U.S. at 199-200.  See, e.g., Drake, 543 F.3d at 1089 (finding that where first four
9   factors weighed in favor of reliability, four-day delay between robbery and photo spread
10  identification did not call identification's accuracy into question); United States v. Jones, 84 F.3d
11  1206, 1209-10 (9th Cir. 1996) (although drive-by identification by witnesses was suggestive, it
12  was permissible because there was not a substantial likelihood of misidentification).

13  Without reaching the question of whether the procedure was impermissibly suggestive,
14  this court concludes that the identification was permissible because it was sufficiently reliable to
15  outweigh any corrupting effects of a suggestive procedure.  First, regarding the witnesses'
16  opportunity to view the petitioner at the time of the incident, Anthony Patch testified that at the
17  time of the shooting, he saw petitioner running out of a group of people, and fire three shots into
18  the group of people.  (RT 1131-35.)  Patch then testified that petitioner was about 30 feet away
19  from him, and started running toward him.  (RT 1135.)  At one point, petitioner and Patch were
20  about 10-15 feet part from each other when petitioner ran across Patch's path.  (Id.)  Witness
21  Cesar Garcia was next to Patch at the time of the shooting, and saw the shooter fire
22  approximately eight or ten shots.  (RT 1243.)  All three witnesses were within close proximity to
23  petitioner during the shooting, and had a reasonable opportunity to observe him.

24  Second, there is no evidence that any of the witnesses paid more or less attention during
25  the incident, so this factor does not necessarily weigh for or against reliability.

26  Third, at the time of the identification, petitioner was wearing a long-sleeved green shirt
27  with a tear in it, his hair was in cornrows, and he had a ponytail.  (RT 82.)  Patch described

28

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

1   petitioner as being approximately 6 feet tall, about 150 pounds, and a black male.  (RT 1136.)

2   Patch also stated that petitioner was wearing a green, long-sleeved shirt and long khaki or tan

3   pants.  (Id.)  Garcia, who was with Patch, testified that he saw a thin, black man with a gun

4   whose hair was "in twisted chains," and was wearing a green polo shirt with a collar, and some

5   khaki pants.  (Id. at 1242, 1250.)  French described a person who was in the group wearing a

6   neon shirt or green shirt and wearing a ponytail make some kind of a motion with his hands.

7   (RT 1189.)  French turned to his wife to tell her there was a fight going on, and then saw that

8   green-shirted person shooting in the crowd of people in front of him about five or six times.  (RT

9   1190-91.)

10          Fourth, when Patch was taken to identify the shooter, he pointed to petitioner in the van

11  and stated that "there was no doubt in [his] mind" that petitioner was the shooter.  (RT 1153; RT

12  83.)  When Garcia saw petitioner in the van, he indicated that petitioner was the shooter and was

13  "positive" about his identification.  (RT 1261.)  When French was shown petitioner in the van,

14  French confirmed that petitioner was the shooter and indicated that he was "a hundred percent

15  certain."  (RT 1198.)

16          And, finally, each of the three identifications were made within one hour of the shooting.

17  (RT 82.)  Thus, the Neil factors weigh in favor of reliability.

18          In addition, the court rejects petitioner's claim that he was entitled to counsel at his

19  showup identification.  The Sixth Amendment right to counsel attaches "only at or after the time

20  that adversary judicial proceedings have been initiated against him."  Kirby v. Illinois, 406 U.S.

21  682, 688 (1972).  Adversary judicial proceedings are initiated by way of formal charge,

22  preliminary hearing, indictment, information, or arraignment.  See United States v. Gouveia, 467

23  U.S. 180, 188 (1984).  Here, petitioner was detained and arrested, but he was not formally

24  charged, nor had any adversarial judicial proceedings commenced.  Moreover, attachment of the

25  right to counsel alone does not guarantee a defendant the assistance of counsel; the right must

26  also be invoked by hiring an attorney or asking that one be appointed.  See United States v.

27  Harrison, 213 F.3d 1206, 1209 (9th Cir. 2000).  Here, even assuming that the right to counsel

28

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

1    had attached, there is no indication that petitioner invoked that right by requesting counsel.

2

3         Accordingly, the state court's rejection of this claim was not contrary to, or an

4    unreasonable determination of, clearly established Supreme Court law.

5              5.     Motion for judgment of acquittal

6         At the close of the prosecution's case, petitioner moved for a motion for judgment of

7    acquittal on the five counts of attempted murder, and the accompanying gang enhancements.

8    The trial court denied the motion.  Petitioner now claims that the denial of his motion violated

9    his right to due process.

10         However, as stated above, a petitioner may not "transform a state-law issue into a federal

11    one merely by asserting a violation of due process."  Langford, 110 F.3d at 1389.  Conclusory

12    allegations fail to state a claim.  See Allard, 423 F.2d at 1217.  Except to merely mention the

13    Fourteenth Amendment, petitioner does not support his allegation of a federal constitutional law

14    with any facts or argument.  Moreover, the Supreme Court has repeatedly held that federal

15    habeas writ is unavailable for violations of state law, which is exactly what petitioner is arguing

16    here.  See Cooke, 131 S. Ct. at 861-62.

17         The respondent points out that petitioner's federal habeas claim is unexhausted and

18    meritless.  This court agrees.  Petitioner concedes that "it is not unconstitutional to submit a case

19    to the jury, and allow it in the first instance to assess the sufficiency of the evidence."  (Traverse

20    at 66.)  He argues that he should not have been exposed to "potential convictions for what is

21    clearly insufficient proof, which is an essential part of the due process guarantee by the

22    Fourteenth Amendment."  (Id.)  Even assuming that some federal due process violation occurred

23    when the trial court denied petitioner's motion for judgment of acquittal, he fails to demonstrate

24    that he was prejudiced.  "Only if the record demonstrates that the jury's decision was

25    substantially influenced by the error or there is grave doubt about whether an error affected a

26    jury will [petitioner] be entitled to relief."  Sechrest v. Ignacio, 549 F.3d 789, 808 (9th Cir.

27    2008).  As stated above, petitioner was not convicted of any counts of attempted murder, or the

28

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

related gang enhancements. Petitioner's argument that the submission of the attempted murder evidence to the jury must have led the jury to believe that must find petitioner guilty of "something" is untenable. The jury was instructed that it could not find petitioner guilty of any charge unless it found all the elements beyond a reasonable doubt. The jury is presumed to follow the instructions given at trial, and there is no evidence that it did not do so. <u>See, e.g.</u>, <u>Francis v. Franklin</u>, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, and make sense of, and follow the instructions given them.")

Accordingly, petitioner is not entitled to habeas relief on this claim.

6.    <u>Proposed defense jury instructions</u>

Petitioner claims that the trial court erred in refusing to give defense proposed jury instructions numbers 2, 3, 4, 5, and 6. At trial, petitioner sought to instruct the jury on the following:

<u>Special Instruction 2</u>: A person assailed may rely on apparent existence of danger.
<u>Special Instruction 3</u>: The doctrine of self-defense is available to insulate one from criminal responsibility where his act, justifiable in self-defense, inadvertently results in the injury of an innocent bystander.
<u>Special Instruction 4</u>: Evidence of third-party threats against the defendant may be considered by you to support a claim of self-defense if there is also evidence from which you may find that the defendant reasonably associated the victim with these threats.
<u>Special Instruction 5</u>: The doctrine of transferred intent does not apply at all in a simple assault case; there is no specific intent to transfer.
<u>Special Instruction 6</u>: Before you can find the gang enhancements alleged in this case to be true, you must first find beyond a reasonable doubt that the defendants specifically intended to commit the underlying felony of attempted murder, as charged in the information herein, and that he acted with the specific intent to promote, further, or assist in felonious criminal conduct by members of a gang or that he acted in association with a gang member

(CT 829.)

The trial court denied petitioner's requests. Regarding special instruction #2, the trial court concluded that the jury instruction 5.51 adequately covered the statement. (RT 2235.) Regarding special instruction number 3, the trial court was inclined to give a modified version of

1  it, and agreed to instruct, "When a person lawfully commits an act in self-defense, and through

2  misfortune or accident the act results in injury to another person, the person lawfully acting in

3  self-defense does not thereby commit a crime." (CT 984.)  Regarding special instruction number

4  4, the trial court sustained the prosecution's objection on the basis that there was no evidence of

5  a third party threat.  (RT 2237.)  Regarding special instruction number 5, the trial court

6  determined that it was inappropriate because petitioner was not being charged with simple

7  assault as a lesser included offense, and the instruction was therefore irrelevant.  (RT 2238.)

8  Regarding special instruction number 6, the trial court determined that other instructions

9  adequately covered this sentiment.  (RT 2239.)

10      A state trial court's refusal to give an instruction does not alone raise a ground cognizable

11  in a federal habeas corpus proceedings.  See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir.

12  1988).  The error must so infect the trial that the defendant was deprived of the fair trial

13  guaranteed by the Fourteenth Amendment.  See id.  Due process requires that "'criminal

14  defendants be afforded a meaningful opportunity to present a complete defense.'"  Clark v.

15  Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485

16  (1984)).  The defendant is not entitled to have jury instructions raised in his or her precise terms

17  where the given instructions adequately embody the defense theory.  United States v. Del Muro,

18  87 F.3d 1078, 1081 (9th Cir. 1996).  An examination of the record is required to see precisely

19  what was given and what was refused and whether the given instructions adequately embodied

20  the defendant's theory.  See United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979).

21  In other words, it allows a determination of whether what was given was so prejudicial as to

22  infect the entire trial and so deny due process. See id.

23      The omission of an instruction is less likely to be prejudicial than a misstatement of the

24  law.  See Walker v. Endell, 850 F.2d at 475-76 (citing Henderson v. Kibbe, 431 U.S. at 155).

25  Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an

26  "'especially heavy burden.'"  Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting

27  Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

28

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

1    Petitioner's arguments regarding special instructions 2, 3, and 6 are meritless.  As

2    respondent points out, petitioner does not argue that he was not afforded a meaningful

3    opportunity to present a complete defense.  His argument is that his proposed instructions were

4    "more neutral," and therefore "better."  This is insufficient to warrant habeas relief.  In addition

5    petitioner's arguments regarding special instructions 4 and 5 also fail because they were

6    irrelevant and unsupported by the evidence.

7        Accordingly, the state court's rejection of this claim was not contrary to, or an

8    unreasonable application of, clearly established Supreme Court law.

9        7.    Special prosecution jury instruction

10       At trial, the prosecution requested a special jury instruction regarding the gang

11   enhancement.  (RT 2228.)  Specifically, the prosecution's instruction provided definitions of a

12   pattern of particular criminal gang activity and a criminal street gang.  (CT 998-99; RT 2228.)

13   Petitioner claims that the giving of the gang enhancement instruction was improper when there

14   was insufficient evidence that he belonged to a gang.

15       Again, even assuming the giving of the instruction was erroneous, petitioner cannot

16   demonstrate that it had a substantial or injurious effect in determining the jury's verdict.

17   Petitioner was not convicted of any of the five counts of attempted murder, or their related gang

18   enhancement allegations.  Thus, any error in giving this special gang enhancement

19   instruction did not substantial affect the jury's verdict.  O'Neal v. McAninch, 513 U.S. 432, 436

20   (1995).

21       Accordingly, petitioner is not entitled to federal habeas relief on this claim.

22       8.    Modification of instruction, and the transferred intent doctrine

23       The trial court gave CALJIC 9.00, 9.01, and 9.02, which instructed on assault, "present

24   ability," and aggravated assault.  The trial court also gave an additional instruction to clarify any

25   confusion over the necessary intent required for the crime of assault with a firearm.  The court

26   instructed:  The crime of assault with a firearm as charged in Counts 1, 2, 3, 5, and 9 is a general

27   intent crime.  To constitute an assault with a firearm, it is not necessary that there be a specific

28

1    intent to injure any particular person actually injured. However, the general intent for assault, as

2    defined in these instructions, must be proved." (CR 968)  Petitioner claims that the trial court's

3    instruction was essentially a modified "transferred intent doctrine," which is not applicable to a

4    charge of assault, which is a general intent crime.

5           Petitioner has not shown that the additional instruction by itself so infected the entire trial

6    that the resulting conviction violates due process. See Estelle v. McGuire, 502 U.S. at 72. The

7    jury was properly instructed on all the elements of assault with a firearm, and was aware that it

8    must find all the elements beyond a reasonable doubt. Further, petitioner cannot demonstrate

9    that there was a substantial and injurious effect or influence in determining the jury's verdict. As

10   stated above, three witnesses identified and testified that they saw petitioner shoot into a crowd

11   of people under circumstances in which he knew would probably result in the application of

12   physical force against another.

13          Accordingly, the state court's rejection of this claim was not contrary to, or an

14   unreasonable application of, clearly established Supreme Court law.

15                                        **CONCLUSION**

16          The petition for a writ of habeas corpus is DENIED as to Claims 2-8.

17          The court reserves ruling on Claim 1. Respondent is ordered to produce the full

18   transcript of voir dire proceedings as well as any juror questionnaires of jurors who were

19   questioned in the voir dire process within **30 days** of the filing date of this order. Respondent

20   shall then have **45 days** from the date it files those documents in which to file a supplemental

21   answering brief. Petitioner shall file any supplemental traverse within **30 days** thereafter. If the

22   full transcript of the voir dire or questionnaires are no longer available, respondent shall notify

23   the court in its supplemental answering brief and discuss what, if any, legal consequence the

24   unavailability of those documents has on the resolution of this claim.

25          IT IS SO ORDERED.

26   DATED: _____          _Ronald M. Whyte_

27                                    _____
                                      RONALD M. WHYTE
28                                    United States District Judge

Order Denying in Part Petition for Writ of Habeas Corpus; Further Briefing
G:\PRO-SE\SJ.Rmw\HC old\Hc.02\Johnson632denparthc.wpd

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JOHNSON,

             Plaintiff,

  v.

RUNNELS,

             Defendant.

_____/

Case Number: CV02-04632 RMW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 4, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jamai Johnson P84615
California State Prison-Solano
13X2U
P.O. Box 4000
Vacaville, CA 95696

Dated: April 4, 2012

                            Richard W. Wieking, Clerk
                            By: Jackie Lynn Garcia, Deputy Clerk